UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL R. KIELLER,

        Plaintiff,

v.

        Case No. 1:05-CV-163
        Hon. Wendell A. Miles

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on November 7, 1948 and graduated from high school (AR 53, 71).[1] Plaintiff stated that he became disabled on January 1, 1999 (AR 53). Plaintiff had previous employment as a vegetable sorter, duct hanger, bus cleaner/custodian, industrial custodian and upholstery apprentice (AR 82). Plaintiff identified his disabling conditions as post traumatic stress disorder (PTSD) with social phobia and arthritis (AR 65). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on June 24, 2004 (AR 21-31). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff was insured for DIB through December 31, 2002 and had not

3

engaged in substantial gainful activity since the alleged onset of disability (AR 30). Second, the ALJ found that he suffered from the severe impairment of PTSD (AR 30). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 30). The ALJ decided at the fourth step that plaintiff:

> has the residual functional capacity for light work, lifting a maximum of 20 pounds and lifting 10 pounds frequently; standing, walking, and/or sitting six hours of an eight hour work day; no use of ladders, scaffolds, or ropes; only occasionally using ramps or stairs; only occasional stooping, crouching, kneeling, crawling; only occasional reaching overhead with the left upper extremity; only work which involves 1, 2, or 3 step instructions; only simple unskilled work with jobs that don't require him to read, compute/calculate, problem solve, or reason; only jobs on which he can be late or absent once per month; work that requires spending no more than 15 minutes per day in close proximity of co-workers; work that involves minimum contact with and minimum direction from a supervisor; routine work that does not require changes or adaptations more than once per month; jobs that do not have production quotas; low stress jobs; and jobs that will not require the use of public transportation.

(AR 30). The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 30).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 31). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in the lower peninsula of Michigan: hand packager (1,500 jobs); vehicle washer/equipment cleaner (800 jobs); inspector (200 jobs); and assembler (1,000 jobs) (AR 31). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 31).

## III. ANALYSIS

Plaintiff raises five issues on appeal.

> **A. The ALJ failed to give adequate weight and consideration to the combined effects of the exertional and non-exertional disabilities of plaintiff contrary to 20 C.F.R. § 404.1527.**

Plaintiff contends that the ALJ only considered the work limitations caused by plaintiff's PTSD. Plaintiff's Brief at 10. Specifically, the ALJ did not consider the effects caused by his hepatitis C and end stage cirrhosis of the liver, i.e., fatigue. *Id.* In a form dated December 8, 2003, treating physician Richard Mosely, M.D., indicated that plaintiff had certain limitations related to hepatitis C (AR 501-06). Dr. Mosely indicated that plaintiff did not experience "extraordinary fatigue and/or daytime sleepiness;" that his fatigue "seldom" interfered with his concentration; that plaintiff's ability to stand, walk, sit, lift and carry were not affected by the hepatitis C; and, that plaintiff did not need a job requiring him to shift positions "at will" (AR 501-04). However, Dr. Mosely stated that plaintiff was incapable of tolerating even low work-related stress, that the disease may adversely affect his work performance, and that he may need to take unscheduled breaks during an 8-hour workday (AR 501-04).

Since plaintiff's insured status for purposes of receiving disability insurance expired on December 31, 2002, he cannot be found disabled unless he can establish that a disability existed on or before that date. "In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). *See also Estep v. Weinberger*, 525 F.2d 757, 757-58 (6th Cir.1975). Medical evidence relating to a time period after the last insured date is only

minimally probative. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Such evidence is only considered "to the extent it illuminates a claimant's health before the expiration of his or her insured status." *Jones v. Commissioner of Social Security*, No. 96-2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997); *Higgs*, 880 F.2d at 863.

In his decision, the ALJ considered the functional limitations proposed by Dr. Mosely (AR 24-25, 27-28, 501-06, 551). However, the ALJ chose to give considerable weight to the physical RFC assessment performed by a non-examining DDS physician dated July 30, 2002 (AR 356-63). The DDS assessment concluded that plaintiff, with normal breaks, could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday (AR 356-63). Dr. Mosely's opinion rendered on December 8, 2003, based upon an examination conducted that day, is only minimally probative of plaintiff's condition as it existed on December 31, 2002 (plaintiff's last insured date). *See Jones*, 1997 WL 413641 at *1. On the other hand, the RFC determination of July 30, 2002 evaluated plaintiff's condition during the relevant time period. The ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. § 404.1527(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation . . . administrative law judges must consider findings of state agency medical and psychological consultants or other program physicians or psychologists as opinion evidence"). Viewing the record as a whole, the court concludes that substantial evidence supports the ALJ's decision.

> **B.      The ALJ failed to give adequate weight and consideration
> to the disability determinations of the U.S. Department of
> Veterans Affairs which assigned a 70 % service connected
> disability and a 100% disability based on unemployability
> to plaintiff effective May 27, 2004.**

Next, plaintiff contends that the ALJ was required to acknowledge his VA service connected disability. Plaintiff's Brief at 11-12. Plaintiff variously refers to the disability as a 70% PTSD rating, an 80% service connected disability and 100% disability based on unemployability effective May 27, 2004. *Id.*   As an initial matter, plaintiff has failed to point out particular exhibits in the record that establish his VA disability determination. At the hearing, plaintiff testified that he had a 10% service connected disability with the VA "for quite a few years" (AR 609). The medical expert testified that plaintiff's records indicated a 70% service connected disability for PTSD in the Fall of 2003 (AR 609). Records generated after the administrative hearing and submitted to the Appeals Council include a VA decision entered September 16, 2004, which found that effective May 27, 2004, plaintiff had the following service connected disability ratings: diabetes mellitus type II associated with herbicide exposure (20%); right lower extremity peripheral neuropathy (10%); and left lower extremity peripheral neuropathy (10%) (AR 582). Sometime after September 16, 2004, the VA concluded that plaintiff's "overall or combined rating is 80%" (AR 581).[2] While plaintiff asserts that he has "a 100% disability based on unemployability," he does not identify any VA document to corroborate this assertion. Plaintiff's Brief at 11.

The ALJ was not bound to accept the disability ratings made by the VA. The regulations at 20 C.F.R. § 404.1504 provide in pertinent part that:

---

[2] This information, which is an attachment to plaintiff's counsel's November 10, 2004 letter to the Appeals Council, appears to be the second page of an unidentified letter from the VA (AR 581).

7

> A decision by any non-governmental agency or any other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

Furthermore, plaintiff's testimony established that he was rated as only 10% disabled prior to the termination of his insured status for DIB (AR 609). Assuming that the VA rated plaintiff as 80% disabled in May 2004, this rating occurred nearly 1 1/2 years after his last insured date and is only minimally probative of his condition while he was insured for DIB. Accordingly, the ALJ was not required to adopt the VA disability ratings or find plaintiff disabled based upon these ratings.

### C. The ALJ erred in failing to find that plaintiff's PTSD meets and/or equals the criteria of Listing 12.06.

Next, plaintiff contends that his PTSD meets the criteria of Listing 12.06. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.06. At the third step of the sequential evaluation, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Evans v. Secretary of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir.1987). The "Listing of Impairments" is set forth at 20 C.F.R. Part 404, Subpt. P, Appendix 1. The listing "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. In order to be considered disabled under the listing, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Evans*, 820 F.2d at 164. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of

the requirements of the listing are present. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984).

The medical criteria for a listing, i.e., the inability to perform "gainful activity," presents a higher level of severity from the statutory standard, i.e., the inability to perform "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* Consequently, when a claimant successfully demonstrates that he meets a listed impairment, the Commissioner will find the claimant disabled without considering his age, education and work experience. 20 C.F.R. § 404.1520(d).

Dr. Jeffrey M. Andert, a psychologist, testified that plaintiff's PTSD came within Listing 12.06 (AR 612-13). For plaintiff to be deemed disabled under Listing 12.06, he must meet the "A" criteria for the listing, as well as either the "B" or "C" criteria. Dr. Andert testified that plaintiff met the "A" criteria because he suffered from "[a]pprehensive expectations," "[v]igilance and scanning," and "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked distress" (AR 613). *See* Listing 12.06A.1.c, 12.06A.1.d, and 12.06A.5. To meet the "B" criteria under the listing, plaintiff must demonstrate that his condition results in at least two of the following: (1) marked restrictions in activities and daily living; (2) marked difficulties in maintaining social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; or (4) repeated episodes of decomposition, each of an extended duration. Listing 12.06.B. Here, Dr. Andert testified that plaintiff did not meet the "B" criteria (AR 613-14). Specifically, Dr. Andert opined that plaintiff had: (1) moderate restrictions in activities and daily living; (2) marked

difficulties in maintaining social functioning; (3) moderate restrictions in maintaining concentration, persistence, or pace; and (4) no episodes of decomposition since the onset date of January 1999 (AR 614). In the alternative, plaintiff must meet the "C" criteria of the listing, which is defined as the "complete inability to function independently outside the area of one's home." Listing 12.06.C. In this regard, Dr. Andert testified that plaintiff did not meet the "C" criteria for Listing 12.06 (AR 614).

The ALJ concluded that plaintiff's diagnosis of PTSD failed to meet the "B" or "C" criteria, based upon the opinions of Dr. Andert and the DDS physician's RFC determination of July 1, 2002 (AR 25-26, 338-51). In this regard, the court notes that the DDS physician reviewed plaintiff's condition under Listing 12.04 (affective disorders) rather than Listing 12.06 (anxiety related disorders) (AR 338-51). Nevertheless, the ALJ could rely on the opinion expressed by the DDS physician, which characterized plaintiff's condition as an affective disorder. Both Listings 12.04 and 12.06 include the same "B" criteria. With respect to the "B" criteria, the DDS physician concluded that plaintiff had: (1) mild restrictions in activities and daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate restrictions in maintaining concentration, persistence, or pace; and (4) no episodes of decomposition (AR 348). The DDS physician also concluded that plaintiff did not meet the "C" criteria of listing 12.04 (AR 349).[3]

---

[3] The "C" criteria of Listing 12.04 consists of the following:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment

10

Plaintiff contends that he meets the requirements of listing 12.06, relying on Mr. Hicks' April 2, 2004 opinion and by virtue of his hospitalization at the VA from October 26, 1995 to December 22, 1995. Plaintiff's Brief at 13-14.  Plaintiff's contentions are not persuasive.  First, as the court previously discussed, Mr. Hicks' April 2004 opinion is only minimally probative of plaintiff's condition as of his last insured date.  Second, plaintiff's 1995 hospitalization occurred three years before his alleged onset date of January 1, 1999 and is not relevant to this claim.[4] Accordingly, based upon this record, the ALJ's conclusion that plaintiff failed to meet the requirements of Listing 12.06 is supported by substantial evidence.

> **D.     Since the testimony of the vocational expert (VE) supports a finding that there is no work in the national economy upon a proper consideration of all plaintiff's limitations, the court should award benefits.**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately

---

> that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[4] The court notes that Dr. Andert was aware of plaintiff's 1995 hospitalization, observed that plaintiff began his current series of outpatient treatment in 1999, and specifically restricted his opinion to plaintiff's condition "since the onset date of January 1999" (AR 609, 614).

portrays the claimant's physical and mental impairments. *Id.*   However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, plaintiff contends that the ALJ should have included all of the limitations as set forth in Exhibit 16F, which is a psychiatric evaluation prepared by the VA on April 2, 2004 (AR 552-58).  In his evaluation, plaintiff's therapist, Mr. Hicks states that plaintiff had marked or extreme difficulties in nearly every area of functioning (AR 552-58).  The ALJ rejected this evaluation, observing that Mr. Hicks "paints a very bleak picture and limits the claimant in almost every aspect that is listed on the questionnaire," which was "totally inconsistent with his voluminous progress notes" (AR 27). The ALJ points out that plaintiff's condition did not appear so dire: in May 1999 plaintiff reported that he was taking his medication and it was effective; in January 2000 plaintiff was struggling with school stressors but had stabilized by February; in a report dated May 31, 2000, Mr. Hicks reported no evidence of any gross psychiatric manifestations; in January 2002 plaintiff reported he was doing well and his PTSD symptoms were minimal; in February 2002 plaintiff reported his physical condition as stable and overall he was doing better; and, by January 2003 plaintiff reported that he controlled his impulses and intrusive thoughts by doing upholstery work and that his medications were effective (AR 23, 130, 141, 234, 260, 271, 306, 430).

The ALJ could properly decline to include Mr. Hicks' extreme restrictions in his hypothetical question posed to the VE.  First, the ALJ found the limitations to be inconsistent with the underlying medical record.  Second, Mr. Hicks' evaluation occurred more than a year after

plaintiff's last insured date and was only minimally probative of his condition at that time. The ALJ's hypothetical question posed to the VE included limitations as set forth in the RFC determination (AR 30, 624-25). Given these rather extensive limitations, the VE identified some 3,500 jobs that such an individual could perform (AR 625). Accordingly, the hypothetical questions posed by the ALJ and the VE's testimony established that plaintiff could perform a significant number of jobs in the national economy.

### E. In the alternative, plaintiff seeks a remand for the ALJ to re-evaluate his medical records.

Finally, plaintiff seeks a remand for the ALJ to re-consider the evidence. Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994). As the court previously discussed, *supra*, the ALJ's decision is supported by substantial evidence. Accordingly, there is no basis for a sentence-four remand.

Plaintiff has presented evidence to the court that was not viewed by the ALJ, including a purported affidavit from Mr. Hicks dated November 8, 2004, and the VA's decision that plaintiff had a disability rating of 80% in May 2004 (AR 571-85). This material was submitted to the Appeals Council after the ALJ denied plaintiff's claim (AR 566-85). To the extent that plaintiff seeks a sentence-six remand for further consideration of this matter, such a request should be denied. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under

13

42 U.S.C. § 405(g).  *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).  In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

The standard in determining whether to remand a claim for the consideration of new evidence is governed by statute:

> The court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g)(emphasis added).  In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711.  Good cause is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability."  *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986).

Here, plaintiff has not shown good cause for failing to present Mr. Hicks' November 8, 2004 "affidavit" to the ALJ.  First, this statement is not an affidavit; it is not notarized or verified in any manner (AR 571-73). Second, Mr. Hicks' statement was prepared after the ALJ's decision and submitted to the Appeals Council to contest plaintiff's adverse decision. The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision.  *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic

14

permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process). Here, Mr. Hicks' statement did not arise in the course of continued medical treatment but was generated for the purpose of attempting to prove disability. *See Koulizos*, 1986 WL 17488 at *2. Accordingly, plaintiff has not demonstrated good cause for failing to present this statement to the ALJ.

In addition, the VA disability determination would not have caused the ALJ to reach a different disposition of plaintiff's claim. As the court previously discussed, the ALJ was not bound by the VA disability determination and, in any event, this determination was minimally probative of plaintiff's condition as of his last insured date of December 31, 2002. Accordingly, plaintiff is not entitled to a sentence-six remand with respect to this material.

## IV.  Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated: January 12, 2006                 /s/ Hugh W. Brenneman, Jr.
                                        Hugh W. Brenneman, Jr.
                                        United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).