UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL R. KIELLER,

        Plaintiff,

                              Case No. 1:05-cv-163

v.

                              Hon. Wendell A. Miles

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

OPINION AND ORDER

      Plaintiff, Michael R. Kieller, filed this action for judicial review of the final decision of the Commissioner of Social Security (Commissioner) that Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. §§ 416(i), 423. United States Magistrate Judge Hugh W. Brenneman, Jr., submitted a Report and Recommendation (dkt. #14), recommending that the decision of the Commissioner be affirmed. Plaintiff filed objections to the Magistrate Judge's Report and Recommendation, (dkt. # 15), and Defendant responded to the Plaintiff's objections (dkt. #16). For the reasons that follow, the Court overrules the Plaintiff's objections, and adopts the Magistrate Judge's Report and Recommendation.

STANDARD OF REVIEW

      When objections have been made to a magistrate judge's report and recommendation, the district court's standard of review of the report and recommendation is *de novo*. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Judicial review of a final decision regarding disability benefits is

limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied.  Warner v. Comm'r of Soc. Sec., 375 F. 3d 387, 390 (6th Cir., 2004). There is substantial evidence when a "'reasonable mind might accept'" the relevant evidence "'as adequate to support a conclusion.'" Id. quoting Kirk v. Sec. of Health & Human Servs., 667 F. 2d 524, 535 (6th Cir. 1981).  If there is substantial evidence supporting the Commissioner's decision, the court must defer to the decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion . . . .'" Id., quoting Wright v. Massanari, 321 F. 3d 611, 614 (6th Cir. 2003).  The court may not make credibility determinations or resolve conflicts in the evidence.  Walters v. Comm'r of Soc. Sec., 127 F. 3d 525, 528 (6th Cir. 1997).  Even if the court "were to agree with a plaintiff that benefits were justified," the court "is not permitted to reverse an administrative determination if substantial evidence supports that decision."  Kuhn v. Comm'r. of Soc. Sec., 124 F. App'x 943, 947-48, 2005 WL 513488, *5 (6th Cir. 2005).

BACKGROUND

Plaintiff claims he became disabled on January 1, 1999, as a result of post traumatic stress disorder (PTSD) with social phobia and arthritis.  (AR 53, 65).  Plaintiff's insured status for Social Security disability benefits ended on December 31, 2002. (AR 22).  After Plaintiff's claim was denied on initial review and reconsideration, he appeared at a hearing before an Administrative Law Judge (ALJ).  The ALJ concluded that Plaintiff suffered from the severe impairment of PTSD and was not able to perform his past work as a vegetable sorter, duct hanger, bus cleaner/custodian, industrial custodian or upholstery apprentice.  The ALJ determined that a person with Plaintiff's limitations could perform a wide range of light work

2

(AR 31), including hand packager, vehicle washer/equipment cleaner, inspector, and assembler. The ALJ's decision was approved by the Appeals Council and became the final decision of the Commissioner.

Plaintiff, a Viet Nam veteran, was 55 years old when the ALJ denied his claim for disability benefits. He testified that he has arthritis in his lower back, shoulders and elbows, hepatitis C, diabetes, cirrhosis of the liver, has had three hernia operations, (AR 597), and mental problems (AR 599). He sees a therapist once a month, and takes medication for his diabetes, shoulder, and mental problems. (AR 599). Plaintiff reads and watches television, does housework and grocery shopping, although he shops early to avoid many other people being at the store. He can bend, squat and climb stairs, and could walk about one-half mile, but has trouble lifting. (AR 602).

Plaintiff objects to the Magistrate Judge's findings with respect to the following issues: (1) whether the ALJ gave adequate weight and consideration to the combined effect of Plaintiff's exertional and nonexertional limitations; (2) whether the ALJ gave adequate weight and consideration to the disability determination of the U.S. Department of Veterans Affairs (VA); (3) whether the ALJ erred in finding that Plaintiff's PTSD did not meet or equal Listing 12.06; (4) whether the hypothetical question posed to the Vocational Expert (VE) adequately reflected Plaintiff's limitations; and (5) whether this case should be remanded to reconsider an affidavit submitted to the Appeals Council.

A. <u>Combined effects of exertional and nonexertional limitations</u>

Plaintiff argues that the ALJ failed to consider the limitations caused by Plaintiff's hepatitis C and end stage cirrhosis of the liver, namely fatigue. A liver biopsy in March 2002 revealed cirrhosis and hepatitis C infection. Doctor Richard Moseley began treating Plaintiff in January 2002, and completed a residual functional capacity assessment in May 2003. (AR 501). Dr. Moseley identified Plaintiff's symptoms as chronic fatigue, sleep disturbance, and muscle and joint aches, but noted that Plaintiff's functional limitations would best be assessed by Plaintiff's primary physician, Shanna Tanna. (AR 501). Dr. Moseley reported that Plaintiff did not experience extraordinary fatigue or daytime sleepiness, and he seldom experienced fatigue severe enough to interfere with attention and concentration (AR 502), but may have to take unscheduled breaks during an eight-hour day due to fatigue. He further reported that Plaintiff was not a malingerer, and that emotional factors contributed to the severity of Plaintiff's symptoms. (AR 502). Dr. Moseley's stated opinion that Plaintiff was incapable of tolerating even "low stress" work was "[b]ased on patient's assessment." (AR 503).

The ALJ noted Dr. Moseley's report in his decision. An ALJ is not required to accept the opinion of even a treating doctor that is based simply on the patient's own assessment. The ALJ did find that Plaintiff was limited to routine jobs that do not have production quotas, do not require changes or adaptations more than once a month, and are low stress. (AR 28). Dr. Moseley reported that Plaintiff did not experience extraordinary fatigue, daytime sleepiness, or severe fatigue that interfered with attention and concentration. Dr. Moseley's report does not show that Plaintiff's fatigue would further reduce his residual functional capacity. Moreover, while Plaintiff testified to significantly limited daily activity, he did not attribute his sedentary

4

routine to fatigue.

### B. VA disability rating

The ALJ noted that Plaintiff was considered partially disabled by the VA, but declined to accept the VA's determination because a decision by another government agency concerning a individual's disability is based upon its own rules and is not binding upon the Social Security Administration (SSA).  (AR 26, citing 20 C.F.R. § 404.1504).  Plaintiff argues that the ALJ was required to give weight to the VA determination that Plaintiff was 100% disabled, or explain why he was rejecting that determination.

Although a VA rating of disability does not necessarily compel the SSA to reach an identical result, the ALJ must generally consider the VA's finding in reaching his decision.  See McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (ALJ must give great weight to a VA determination of disability); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir.2001) (VA disability rating is generally entitled to "great weight" and "must be considered by the ALJ"); Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir.1998) ("[F]indings of disability by other federal agencies . . . are entitled to some weight and must be considered in the ALJ's decision"); Baca v. Dept. of Health and Hum. Svcs., 5 F.3d 476, 480 (10th Cir.1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered."); Davel v. Sullivan, 902 F.2d 559, 560 n.1 (7th Cir. 1990) (VA's decision is entitled to some weight and should be considered by ALJ);  Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir. 1085) (VA rating entitled to substantial weight); Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984) (VA rating entitled to great weight).  However, as discussed below, the facts of this case do not warrant the application of the general rule.

Plaintiff testified at the hearing, held April 7, 2004, that he had a 10% service connected disability "for quite a few years," and that in the fall of 2003, the rating was increased to 70% based upon his PTSD. (AR 609). Document evidence shows that on May 27, 2004, the VA assessed Plaintiff's overall disability at 80% based upon his physical conditions: diabetes mellitus type II, hypertension, and peripheral neuropathy of Plaintiff's legs and upper arms. Plaintiff asserts in his Brief (dkt. # 10), prepared July 11, 2005, that he is presently receiving 100% disability benefits from the VA.

To qualify for disability insurance under the Social Security Act, a claimant must establish that he was disabled before his insured status expired, which in this case was December 31, 2002. 42 U.S.C. § 423(a) and (c); Moon v. Sullivan, 923 F.2d 1175, 1182 (6th Cir. 1990). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." Strong v. Soc. Sec. Admin., 88 F. App'x 841, 845 (6th Cir. 2004), citing Cornette v. Sec. of Health & Human Serv., 869 F.2d 260, 264 n.6 (6th Cir. 1988). While the determinations of disability made by the VA in 2003, 2004 and 2005 showed that Plaintiff's physical and/or mental conditions worsened over time, they had little probative value on the issue of whether Plaintiff was disabled when his insured status expired on December 31, 2002.

Accordingly, the ALJ was not required to accept, or give weight to, the VA's post-2002 determinations. The ALJ's determination that Plaintiff retained the residual functional capacity for light work with certain restrictions to accommodate his PTSD was not inconsistent with the VA's 2002 assessment of 10% disability.

C.  PTSD

Plaintiff contends that the ALJ erred in failing to find that Plaintiff's PTSD meets or equals the criteria of Listing 12.06 of the Listing of Impairments.  Listing 12.06 covers anxiety related disorders.  To satisfy listing 12.06, the claimant must satisfy the criteria in section A and either section B or C.  The ALJ found that Plaintiff's PTSD was severe but did not satisfy either criteria B or C.  To satisfy these criteria, a claimant must show that his disorder:

> B.  Result[ed] in at least two of the following:
> 1.  Marked restrictions of activities of daily living; or
> 2.  Marked difficulties in maintaining social functioning; or
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.  Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation or signs or symptoms (which may include deterioration of adaptive behavior); or
> C.  Result[ed] in complete inability to function independently outside the area of one's home.
>
> 20 C.FR. Part 404, Subpart P, Appendix 1, § 12.06.

Plaintiff's PTSD symptoms began shortly before he was discharged from the Army. (AR 427).  He was admitted to the Battle Creek VA Hospital's PTSD program in 1995. (AR 445).  In January 1999, Plaintiff began outpatient treatment with Thomas Hicks, A.C.S.W. (AR 333).   Mr. Hicks' notes reveal that Plaintiff experienced episodes of nightmares, intrusive thoughts, sleep disturbance, aggressive behavior and mood swings.  Mr. Hicks stated that Plaintiff had "moderate PTSD symptoms," (Mar. 1999, AR 320); life was "going well" for Plaintiff (Apr. 1999, AR 315); Plaintiff was "essentially doing well," and his medications were effective (May

7

1999, AR 315); Plaintiff was relating better with his family, had a better mood and decreased anxiety (Sept. 1999, Tr. 274).  In 2000, Mr. Hicks noted that Plaintiff's PTSD symptoms were mild to moderate (May 2000, AR 259); Plaintiff was staying active, his mood was good, but he had a few angry outbursts (Aug. 2000, AR 224).  In January 2001, Plaintiff reported that he was having nightmares and was isolating, but was controlling his angry outbursts. (AR 213).  In 2002, Mr. Hicks reported that Plaintiff was socializing with his family, sleeping well, and was controlling his angry outbursts (Jan. 2002, AR 141); and later, that Plaintiff felt good physically, was socializing with his family, and had a membership at the YMCA (Sept. 2002, AR 430).

Doctor William Decker examined Plaintiff on December 19, 2000.  Dr. Decker diagnosed PTSD based on social withdrawal, nightmares, flashbacks, and enhanced anxiety.  Dr. Decker reported that Plaintiff was withdrawn and subdued with some anticipatory anxiety.  His speech was normal, his thoughts were organized, his concentration and memory were intact, and he had no illusions or delusions.  (AR 215-16).  In June 2002, a state agency medical consultant prepared a mental residual functional capacity assessment (AR 334-351), which indicated that Plaintiff had PTSD with sleep disturbance, intrusive thoughts, nightmares, isolation. (AR. 341).  Most listed symptoms were marked as either not significantly limited or moderately limited.  The examiner listed as markedly limited (1) the ability to carry out detailed instructions, and (2) the ability to interact appropriately with the general public.  (AR 334-35).

Carole Lehmann, a limited licensed psychologist, interviewed Plaintiff in October 2003.  Ms. Lehmann reported that Plaintiff drove the eight miles to her office alone without problems; his eye contact was sporadic; he appeared to be in contract with reality; he had limited insight; his responses were spontaneous and normal in rate; he was logical, coherent, clear, organized and

quite verbal. Ms. Lehmann concluded that Plaintiff was markedly restricted from interacting appropriately with the public, supervisors, and co-workers, but that he could manage benefits in his best interest. (AR 456). Clinical psychologist Jeffery Andert testified at the hearing that Plaintiff's PTSD resulted in moderate restrictions in activities of daily living; marked restrictions in social functioning; moderate restrictions in concentration, persistence and pace; and, since the onset date of January 1999, there had been no episodes of decompensation. Dr. Andert's assessment did not satisfy the B criteria. Additionally, there was no evidence that Plaintiff satisfied the C criteria. (AR. 613-14).

On April 2, 2004, Mr. Hicks prepared an evaluation form for anxiety related disorders. Mr. Hicks indicated that Plaintiff had marked or extreme difficulty with shopping, cooking, cleaning, planning daily activities, and using the telephone and public transportation; marked or extreme limitations in all aspects of social functioning; and, marked or extreme limitations in maintaining concentration, persistence or pace, (Ar. 555-567); and a complete inability to function independently outside the area of his home. (AR 558). The ALJ did not accept Dr. Hicks' evaluation, concluding that it was inconsistent with other evidence in the record.

First, because it was prepared one and a half years after Plaintiff was last insured, its probative value is limited. "Evidence of disability obtained after the expiration of insured status is generally of little probative value." Strong v. Soc. Sec. Admin., 88 F. App'x 841, 845 (6th Cir. 2004), citing Cornette v. Sec. of Health & Human Serv., 869 F.2d 260, 264 n.6 (6th Cir. 1988). Second, the evaluation is incompatible with Plaintiff's reported activities during the relevant time period. In February 1999, Plaintiff began attending school for upholstery training (AR 332, 321), at midterm had a 4.0 grade average (AR 298), and completed the course in 2001. (AR 610).

9

When the upholstery school anticipated closing, Plaintiff was asked to serve as an instructor until the closing (AR 220), which Plaintiff accepted and performed successfully (AR 213).  Plaintiff began an upholstery business, but eventually closed it because of his shoulder problem. (AR 603).  Plaintiff lives alone in an apartment near his brother's home. He prepares his own meals, does his own laundry, and shops for groceries, although early in the morning to avoid other shoppers  (AR 600).  He mows his brother's yard of two and one half acres with a riding mower, reads the newspaper, and reads paperback books.  (AR 601).

Applying the Court's limited standard of review, the Court finds that based upon the record as a whole, substantial evidence supports the ALJ's decision that Plaintiff's PTSD does not satisfy the B or C criteria of listing 12.06.

### D.  Hypothetical presented to the Vocational Expert

Plaintiff argues that according to the Vocational Expert's (VE) testimony there is no work in the national economy that Plaintiff could do if all of Plaintiff's limitations were considered by the VE.  The ALJ asked the VE to assume an individual of Plaintiff's age, education and prior experience, who could perform light work; should never use ladders, scaffolds or ropes; should only occasionally use ramps, stairs, stoop, kneel, crouch or crawl, or reach overhead; should only have duties involving not more than three step instructions; and should have simple, unstressful work that does not require him to read, calculate, compute, problem solve or reason, and that would accommodate tardiness or absence once a month.  In addition, work that entails minimal contact with the public and co-workers, that would not require change or adaptation more than once a month, would not involve quotas, and would not require him to take public transportation.

(AR 624). The VE considered the Labor Department's Dictionary of Occupational Titles (DOT), the Unskilled Employment Quarterly, and her own experience, and identified 3,500 "light" jobs such an individual could perform. The VE reduced the number to 1,500 jobs based on the ALJ's other restrictions. (AR 625). The VE acknowledged that if Plaintiff's testimony was found to be totally credible and Mr. Hicks' 2004 evaluation was adopted in its entirety, Plaintiff would not be capable of substantial gainful activity.

The ALJ's hypothetical reflected the ALJ's findings as to Plaintiff's physical and mental residual functional capacity. For the reasons discussed above, the ALJ was not required to accept Plaintiff's testimony or Mr. Hicks' evaluation in full where there was substantial contrary evidence in the record. The ALJ is required to incorporate in the hypothetical only those limitations accepted as credible. Stanley v. Sec. of Health & Human Servs., 39 F.3d 115, 118-19 (6th Cir. 1994); Casey v. Sec. of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff also contends that the ALJ should have resolved the conflict between the VE's testimony and the DOT. However, neither an ALJ nor a vocational expert are bound by the DOT because the regulations do not obligate them to rely on the DOT's classifications. Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003); Conn v. Sec. of Health & Human Servs., 51 F.3d 607, 610 (6th Cir. 1995). A vocational expert may rely on sources other than the DOT, including her own past experience, in evaluating a hypothetical claimant's vocational ability. Ellison v. Comm'r. of Soc. Servs., 101 F. App'x 994, 996, 2004 WL 138002, *2 (6th Cir. 2004), citing Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994). Accordingly, the ALJ did not err in relying on the VE's testimony.

E.  Remand

After the ALJ had entered his decision, Plaintiff submitted the unsworn affidavit of Mr. Hicks to the Appeals Council (AR 571-73). The affidavit was prepared on November 8, 2004, and supports a finding of disability. Plaintiff argues that, at the least, this case should be remanded for reconsideration in light of Mr. Hicks' affidavit. The statute provides that the court may remand for consideration of new evidence if the evidence is (1) new and (2) material, and (3) there was "good cause" for the claimant's failure to present the evidence in a prior proceeding. 42 U.S.C. § 405(g). This is referred to as a "sentence six remand." Sizemore v. Sec. of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). All three criteria must be met in order to warrant a sentence six remand. Cotton v. Sullivan, 2 F.3d 692, 696 (6th Cir. 1993). The rule extends to all stages of the proceeding following the hearing before the ALJ. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 243 (6th Cir. 2002).

In order to show "good cause," the claimant must give a valid reason for failing to obtain the evidence prior to the hearing. Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 149 (6th Cir. 1996). Plaintiff has not presented any evidence or explanation showing "good cause" for failing to present the affidavit from Mr. Hicks at the hearing level. Additional evidence is considered "new" if that evidence was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). Mr. Hicks' affidavit summarizes Plaintiff's problems during the course of treatment, and Mr. Hicks' assessment of those symptoms. There is no information presented that was unavailable at the time of the hearing. Evidence is material if there is a reasonable probability that the ALJ would have arrived at a different decision if the evidence had been available for consideration. Young

v. Sec. of Health & Human Servs., 925 F.2d 146, 149 (6th Cir. 1990).  The evidence presented in the affidavit in narrative form is not significantly different than Mr. Hicks' assessment found in his April 2004 evaluation form, which the ALJ considered and addressed in his written decision and found inconsistent with Mr. Hicks' voluminous progress notes.  (See AR 25, 27).  Thus, the Court cannot find that there is a reasonable probability that the ALJ would have arrived at a different decision if he had considered Mr. Hicks' affidavit.  The Magistrate Judge correctly found that none of the required sentence six elements is present here.

## CONCLUSION

Having reviewed the record and the Magistrate Judge's Report and Recommendation, the court finds that the Magistrate Judge reached the correct conclusion in the Report and Recommendation.  Accordingly, the court OVERRULES the Plaintiff's objections, ACCEPTS AND ADOPTS the Magistrate Judge's Report and Recommendation, and affirms the decision of the Commissioner of Social Security.

So ordered this 31st day of March, 2006.

                                                  /s/ Wendell A. Miles
                                                  Wendell A. Miles
                                                  Senior U.S. District Judge